PUBLISHED

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **RAPOCA ENERGY COMPANY, LLP**, | )<br>)<br>) Case No. 1:04CV00048 |
| Plaintiff, | )<br>) |
| | ) **OPINION AND ORDER** |
| v. | )<br>) By: James P. Jones |
| **J.L. MINING COMPANY, ETC., ET AL.**, | ) Chief United States District Judge<br>)<br>) |
| Defendants. | ) |

*Daniel R. Bieger, Copeland & Bieger, P.C., Abingdon, Virginia, for Plaintiff; Shawn P. George, George & Lorenson, Charleston, West Virginia, and James W. Elliott and Dawn Figueiras, Elliott Lawson & Minor, Bristol, Virginia, for Defendants.*

In this products liability case, I will deny the plaintiff's request to amend its complaint to assert a claim against the parent corporation of the seller of the mining equipment in question. In addition, because the plaintiff concedes that it has no claim against a sister corporation of the seller, I will grant summary judgment in favor of that defendant.

I

Rapoca Energy Company, LLC ("Rapoca"), the plaintiff in this diversity action, purchased three Model 525 continuous miner machines[1] in 1994 from Long-Airdox Company ("Long-Airdox"). The machines were delivered to Rapoca in November 1994, July 1995, and August 1995. Rapoca claims that the machines did not function properly and that after negotiations between the parties, Long-Airdox agreed in writing on July 22, 1997, to rebuild the machines. The rebuilt machines were delivered in May 1998, October 1998, and January 1999.

Rapoca alleges that the rebuilt machines still did not function properly and that on February 3, 2000, representatives of Long-Airdox admitted "for the first time that it was unable and unwilling to remedy the defects in the 525 miners." (First Am. Compl. ¶ 15.) In addition to breach of contract, Rapoca also claims that Long-Airdox knew that the machines were defective and that it would be unable to repair them.

---

[1] A continuous miner machine has been described as

a large hydraulically powered machine equipped with a drum housing sharp, rotating bits which cut the coal directly from the coal seam. The continuous miner machine retrieves the broken coal, channels the coal over a conveyor running the length of the machine, and subsequently loads the coal onto shuttle cars. The continuous miner machine replaces the undercutting, drilling, and blasting phases of the conventional mining system.

*Consolidation Coal Co. v. Marshall*, 663 F.2d 1211, 1213 n.1 (3d Cir. 1981).

Accordingly, Rapoca asserts a claim of fraud. Rapoca seeks both compensatory and punitive damages.

By written agreement dated July 6, 2001, called the "Global Purchase Agreement," Long-Airdox sold substantially all of its American assets (including the right to use the name "Long-Airdox") to a German company, DBT America Inc., for $40 million. The old Long-Airdox continued to exist (without the transferred assets) and changed its name to J.L. Mining Company ("J.L. Mining"). The proceeds of the sale of Long-Airdox's assets were used to pay existing indebtedness to its parent, The Marmon Corporation. The Marmon Corporation was a party to the Global Purchase Agreement as a guarantor of Long-Airdox's obligations to the purchasers.

Rapoca first filed suit in state court in Virginia on February 26, 2001, against Long-Airdox and The Marmon Corporation. That suit was dismissed without prejudice on December 2, 2003. Thereafter, on May 7, 2004, Rapoca filed the present action in this court against J.L. Mining, formerly called Long-Airdox, and a defendant that it referred to as "The Marmon Group, Inc., formerly called The Marmon Corporation." Jurisdiction of this court exists pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332(a) (West 1993 & Supp. 2004).

The Marmon Group, Inc. ("Marmon Group") has now moved for summary judgment. According to a declaration by an officer of Marmon Group, which Rapoca

does not dispute, Marmon Group is a sister corporation rather than the parent corporation of J.L. Mining. The parent corporation of J.L. Mining is The Marmon Corporation, whose name is now Marmon Wire & Cable LLC. For that reason, among others, Marmon Group moves for summary judgment in its favor.

In response, Rapoca has moved for leave to file a Second Amended Complaint, in which it correctly names Marmon Wire & Cable LLC as the defendant parent company of J.L. Mining. It seeks recovery against the parent company on the ground that the parent is liable for its subsidiary's conduct based on the Global Purchase Agreement, either under the express terms of that agreement or by virtue of third-party beneficiary or constructive trust theories.[2]

---

[2] J.L. Mining contends that Rapoca "drops" its previous alter ego theory of recovery in its proposed Second Amended Complaint (Mem. Opp'n to Pl.'s Mot. to Amend 2), although Rapoca does allege in that pleading as follows:

> The Marmon Corporation and its successors have exercised dominion and control over Long-Airdox/J.L. Mining in a manner . . . that has left Long-Airdox/J.L. Mining as merely a shell or alter ego of the Marmon Corporation and its successors.

(Second Am. Compl. ¶ 76.) However, based on the statements in its briefs and oral argument, it is clear that Rapoca is basing its claim against Marmon Wire & Cable LLC, formerly The Marmon Corporation, solely on the sale of Long-Airdox's assets through the Global Purchase Agreement and the alleged "stripping" of Long-Airdox's cash in the aftermath of that sale, rather than on a lack of corporate formalities or other traditional bases of alter ego liability. *See* Franklin A. Gevurtz, *Piercing Piercing: An Attempt to Lift the Veil of Confusion Surrounding the Doctrine of Piercing the Corporate Veil*, 76 Or. L. Rev. 853, 854-859 (1997) (discussing traditional factors used to pierce corporate veil).

- 4 -

The motions have been briefed and argued are ripe for decision.

II

Rapoca argues that its naming of the defendant The Marmon Group, Inc. was simply a misnomer for the entity now named Marmon Wire & Cable LLC. Indeed, in its Complaint, Rapoca referred to Marmon Group, Inc. as having formerly been called The Marmon Corporation, the prior name of Marmon Wire & Cable LLC. Rapoca contends that it never intended to assert liability against a sister corporation of J.L. Mining, but always intended to sue its parent corporation.

In opposition, J.L. Mining and Marmon Group argue that Rapoca should have known the correct name of the defendant earlier and its requested amendment is thus untimely and should be denied. In addition, the defendants argue that the request to file an amended complaint should be denied as futile on the grounds that (1) the claims are barred by the applicable statute of limitations; and (2) the sale of Long-Airdox's assets affords no basis for recovery against the parent corporation.[3]

---

[3] In Marmon Group's earlier brief in support of its Motion for Summary Judgment, it alleged that Marmon Wire & Cable LLC, formerly The Marmon Corporation, is not subject to personal jurisdiction by this court (Mem. Supp. Mot. Summ. J. 2), but the defendants do not make that argument in their opposition to the Motion to Amend.

A

Under federal practice, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In the present case, it has always been understood that Rapoca was making a claim against the parent corporation of J.L. Mining, formerly Long-Airdox. I find that Rapoca's explanation of how it was confused into believing that Marmon Group was the new name of The Marmon Corporation justifies its mistake. Certainly, bad faith or dilatory motive cannot be attributed to Rapoca, nor was Marmon Wire & Cable LLC, formerly The Marmon Corporation, prejudiced by the misnomer. It is represented by the same counsel who have entered appearances for the current defendants and it has known of the controversy at least since Rapoca first filed suit in state court against it in early 2001. Accordingly, unless the proposed amendment would be futile, Rapoca should not be barred from filing it. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as . . . futility of amendment . . . the leave sought should, as the rules require, be 'freely given.'").

B

The defendants first contend that any claim against Marmon Wire & Cable LLC, formerly The Marmon Corporation, is barred by the applicable statutes of limitations, arguing that because the original machines were delivered in 1994 and 1995 and because Rapoca's lawyer claimed in 1997 that Long-Airdox had made false representations about the machines, the claims are untimely. However, the claims against Marmon Wire & Cable LLC are based on the Global Sales Agreement and its aftermath and not on the sale or repair of the machines. There is no proof in the present record that the claims are barred by limitations.[4]

---

[4] Even if the claims arose directly from the alleged faulty machines, they clearly meet the "relation back" test of Federal Rule of Civil Procedure 15(c)(3), since, as previously explained, Marmon Wire & Cable LLC received notice of the institution of the action and "knew, or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against [it]." Fed. R. Civ. P. 15(c)(3). The state action was brought within four years of the date of delivery of the rebuilt machines and within two years of the date that Rapoca claims that Long-Airdox admitted that it could not repair them. *See* Va. Code Ann. § 8.2-725(1) (Michie 2001) (action for breach of contract of sale of goods must be brought within four years after the cause of action has accrued); Va. Code Ann. § 8.01-243 (Michie 2000) (action for damages for fraud must be brought within two years after the cause of action accrues). Because the present action was filed within six months of the dismissal without prejudice of the state action, the statutes of limitations were tolled when the state action was filed. *See* Va. Code Ann. § 8.01-229(E)(3) (Michie Supp. 2004).

- 7 -

C

Rapoca also argues that the claims asserted against Marmon Wire & Cable LLC in the proposed Second Amended Complaint are futile on the merits. I agree.

While normally the issue would be whether the amended complaint could withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), in the present case Rapoca has agreed in oral argument that all of the facts concerning its claims are before the court, either in connection with Rapoca's Motion to Amend, or with Marmon Group's Motion for Summary Judgment. Thus, based on the full record, it is clear that even if Rapoca were allowed to assert the claims of its proposed amended complaint, they would be unsuccessful.[5]

Rapoca contends that the Global Purchase Agreement makes the parent corporation liable to it for any claim against J.L. Mining, formerly Long-Airdox. Rapoca was not a party to the Global Purchase Agreement and there is nothing in the plain language of the Global Purchase Agreement that expressly affords any rights to Rapoca. Rapoca contends, however, that it is a third-party beneficiary and thus can

---

[5] Technically, Marmon Wire & Cable LLC has not appeared to object to the Motion to Amend, but its arguments are made by J.L. Mining and Marmon Group. Rapoca has not objected that they do not have standing to assert these defenses on their parent company's behalf.

- 8 -

sue the parent corporation on the indemnity duty imposed on it by the Global Purchase Agreement.

The Global Purchase Agreement provides that New York law is to govern its construction and enforcement. (Global Purchase Agreement ¶ 9.6.) Pursuant to New York law,

> only an intended beneficiary of a contract may assert a claim as a third-party beneficiary. A third party is an intended beneficiary where either (1) "no one other than the third party can recover if the promisor breaches the contract" or (2) "the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party."

*Piccoli A/S v. Calvin Klein Jeansware Co.*, 19 F. Supp. 2d 157, 162 (S.D.N.Y. 1998) (citations omitted). The Global Purchase Agreement does not meet these conditions. Indeed, it expressly disclaims an intent to benefit any third party by providing that "nothing in this Agreement, express or implied, is intended to confer upon any other person any rights or remedies of any nature." (Global Purchase Agreement ¶ 9.5.) Such a disclaimer precludes third-party enforcement. *See Vornado PS, L.L.C. v. Primestone Inv. Partners, L.P.*, 821 A.2d 296, 313 (Del. Ch. 2002) (applying New York law).[6]

---

[6] Even if extrinsic evidence were permitted under New York law to prove the necessary intent, *see Piccoli A/S*, 19 F. Supp. 2d at 164 n.41 (disputing whether such evidence is appropriate), no such evidence has been presented or alleged.

D

Rapoca also claims that it is entitled to relief against the parent corporation under the doctrine of constructive trust. *See Vornado PS, L.L.C.*, 821 A.2d at 322 (describing elements of proof necessary to impose constructive trust under New York law). Rapoca bases this claim on the fact that following the sale of Long-Airdox's assets, it transferred the sales price to its parent in repayment of indebtedness. However, no confidential or fiduciary relationship existed between Rapoca and Long-Airdox or its parent corporation, nor are there any facts showing unjust enrichment. While The Marmon Corporation, now Marmon Wire & Cable LLC, did require repayment of pre-existing valid indebtedness from its subsidiary following Long-Airdox's sale of assets, there is no allegation or evidence that the transaction was false or fraudulent.

III

For the reasons stated, the proposed Second Amended Complaint would be futile and accordingly it is **ORDERED** that the Motion to Amend is denied. It is conceded by Rapoca that it has no claim against The Marmon Group, Inc., and it is thus further **ORDERED** that the Motion for Summary Judgment by that defendant is granted.

ENTER: May 6, 2005

/s/ JAMES P. JONES
Chief United States District Judge